# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:17-CR-00255 |
| Plaintiff, | (Judge Brann) |
| v. | |
| GRADY NEAL, | |
| Defendant. | |

**MEMORANDUM OPINION**

**JUNE 15, 2018**

Before the Court for disposition is Defendant Grady Neal's Motion to Suppress Evidence Obtained from an Illegal Vehicle Stop. For the following reasons, this motion will be denied.

## I.     FACTUAL BACKGROUND[1]

On August 24, 2017, a Grand Jury sitting in the Middle District of Pennsylvania returned an Indictment charging Defendant Grady Neal ("Mr. Neal") with one count of Possession with Intent to Distribute a Controlled Substance in

---

[1] This relevant factual narrative derives from testimonial and documentary evidence adduced during an April 3, 2018 suppression hearing in this matter, together with any exhibits attached to the parties' briefing. The court reporter has provided the Court with an unofficial transcript of the suppression hearing. Citations thereto are abbreviated as "4/3/18 Hr'g Tr." Exhibits admitted during the suppression hearing are cited as "4/3/18 Hr'g Ex." I note with specificity the admission of videos documenting Officers Hockman and Herb's interactions with Mr. Neal. These videos corroborate Officer Hockman's recitation of events at the suppression hearing. *See* 4/3/18 Hr'g Ex. G-3.

violation of 21 U.S.C. § 841(a)(1).[2]  This Indictment stems from marijuana, cocaine, and other items found during a July 23, 2017 traffic stop in the City of Williamsport, Lycoming County, Pennsylvania.[3]  Mr. Neal has entered a plea of not guilty to the above charge.[4]  On January 19, 2018, he timely filed the instant motion to suppress all evidence obtained as a result of the July 23, 2017 vehicle stop.[5]  This motion has since been fully briefed[6] and a hearing was held on April 3, 2018.[7]

The chronology of that traffic stop, as relayed by Officer Kurt Hockman during the April 3, 2018 suppression hearing, is as follows.  On the night of July 23, 2017, Officer Kurt Hockman of the Montoursville Borough Police Department ("Officer Hockman") was assigned to a DUI roving patrol in Lycoming County.[8]  Fellow Montoursville Borough Police Officer Christopher Herb ("Officer Herb") accompanied Officer Hockman on this DUI roving patrol.[9]  The authority of Officers Hockman and Herb to conduct these patrols beyond their normal territorial bounds, at issue in Mr. Neal's motion, was granted by a March 24, 2016

---

[2]  ECF No. 1.
[3]  *Id.*
[4]  ECF No. 12.
[5]  ECF No. 22.
[6]  ECF Nos. 23, 26, 46, 47, & 48.
[7]  ECF No. 39.
[8]  4/3/18 Hr'g Tr. at 5: 9–20.
[9]  *Id.* at 21–24.

Order from the Lycoming County Court of Common Pleas ("March 24, 2016 Order").[10] That Order stated, in pertinent part:

> AND NOW, this 24th day of March, 2016, upon Motion of the District Attorney of Lycoming County and with approval of the Lycoming County Salary Board, the appointment of the following individuals as special county Detectives are approved for the particular and temporary assignment to work DUI checkpoints and/or Roving Patrols for the two year period January 1, 2016 through December 31, 2017 as stated in the attached Petition:
>
> 1. Montoursville Borough Police Department - Jeff Gyrrina; Jason Bentley; William Hagemeyer; Kurt Hockman; Marc Stonm; Ronald Bachman; Christopher Herb; Matthew Keller;[11]

Officers Hockman and Herb encountered Mr. Neal after they left the Williamsport Hospital and were traveling down Market Street back toward Montoursville, Pennsylvania.[12] At that time, Officers Hockman and Herb, driving an unmarked Dodge Charger, were following a silver Honda Odyssey van.[13] At the intersection of Market Street and 7th Street, the Officers observed a red Hyundai sedan pull out directly in front of the silver Honda Odyssey van, thereby forcing the van to make an abrupt stop.[14] In so doing, Officer Hockman stated that

---

[10] ECF No. 26-1.

[11] *Id.*

[12] 4/3/18 Hr'g Tr. at 8: 7–16; *see also* 4/3/18 Hr'g Ex. G-2; 4/3/18 Hr'g Ex. D-1, at 2.

[13] *Id.*

[14] 4/3/18 Hr'g Tr. at 8: 17–21.

this red sedan violated 75 Pa.C.S.A. § 3323 by failing to meet the requirements of a stop sign.[15] The officers then turned their patrol car around, activated their emergency lights, and initiated a stop of the red sedan.[16]

The red sedan pulled over to the side of the road and Mr. Neal immediately exited the vehicle.[17] Officer Hockman directed him back into his vehicle and began discussing his actions at the previous intersection.[18] Mr. Neal was unable to produce a license or photo identification.[19] Officer Hockman smelled both alcohol and marijuana emanating from the vehicle.[20] Mr. Neal admitted to consuming alcohol, but provided no explanation for the smell of marijuana.[21] Officer Hockman then led Mr. Neal to the back of the red sedan to be patted for weapons and participate in a standardized field sobriety test.[22]

At the back of his vehicle, but prior to his pat down, Mr. Neal began emptying his pockets.[23] While Officer Hockman warned him not to put his hands

---

[15] *Id.* at 10: 6–14. *See also* 4/3/18 Hr'g Ex. D-1, at 2; Ex. G-2.
[16] *Id.* at 9:17–19.
[17] *Id.* at 9:20–23.
[18] 4/3/18 Hr'g Tr. at 10: 15–20.
[19] *Id.* at 11: 8–13.
[20] *Id.* at 11: 14–18.
[21] *Id.* at 11: 21–23.
[22] *Id.* at 12: 3–5; 10–18.
[23] 4/3/18 Hr'g Tr. at 13: 1–8.

in his pockets, Mr. Neal stated "I'm going to get the stuff out for you."[24] As he spoke, two dime bags containing marijuana fell to the ground.[25] Officer Hockman thereafter took Mr. Neal into custody by handcuffing him.[26] Mr. Neal was arrested for possession of marijuana and crack cocaine, driving with a suspended license, and suspected DUI. A search of Mr. Neal's person made incident to that arrest uncovered an additional glassine bag with two small vials of crack cocaine in it.[27] Mr. Neal was then placed in the rear of the patrol car.[28]

Officer Hockman returned to the red sedan which Mr. Neal was driving and found that it still smelled of marijuana.[29] He searched the center console of the vehicle and found the following items: (1) a glassine bag with marijuana in it; (2) a glassine bag that contained crack cocaine; (3) chocolate lollipops that contained THC; and (4) a Pennsylvania identification for Grady Neal.[30] Officer Hockman also found a child's book bag on the front passenger seat.[31] Inside this bag were

---

[24] *Id.*

[25] *Id.*

[26] *Id.* at 13: 17–21.

[27] *Id.* at 13: 22–25.

[28] 4/3/18 Hr'g Tr. at 14: 18–20.

[29] *Id.* at 14:21–15:3.

[30] *Id.* at 17: 12–17.

[31] *Id.* at 18: 8–12.

two golf ball sized chunks of cocaine, or rock cocaine, 10 small bags of cocaine, and 200 small empty baggies.[32]

## II. ANALYSIS

The instant motion to suppress is based on three independent premises. First, Mr. Neal argues that, at the outset, this evidence should be suppressed because Officers Hockman and Herb were outside their primary jurisdiction at the time of the stop without a statutory exception. Second, he argues that reasonable suspicion to effectuate the vehicle stop was lacking under the Pennsylvania Motor Vehicle Code. Third and finally, Mr. Neal avers that the warrantless search of his vehicle following arrest was done outside an exception to the Fourth Amendment's warrant requirement. I will address these arguments *seriatim*.

### A. Whether Officers Hockman and Herb Were Within Their Legal Authority in Effecting the July 23, 2017 Traffic Stop

In his motion, Mr. Neal argues that all evidence seized must be suppressed because Officers Hockman and Herb, police officers for the Montoursville Borough Police Department, were outside their jurisdiction when effectuating the vehicle stop and subsequent arrest.[33] The Government responds, however, that Officers Hockman and Herb acted pursuant to the Municipal Police Jurisdiction Act, which states that any municipal officer may act outside the territorial limits of

---

[32] *Id.* at 18: 13–15; see also ECF No. 26, at 4.

[33] ECF No. 23; ECF No. 46; ECF No. 48.

his primary jurisdiction to enforce the laws of the Commonwealth "[w]here the officer is acting pursuant to an order issued by a court of record."[34] The Government argues that this provision was satisfied by the Lycoming County Court of Common Pleas' March 24, 2016 Order appointing Officers Hockman and Herb special county detectives for purposes of conducting DUI roving patrols.[35]

Beginning at the suppression hearing and continuing through supplemental briefing, Mr. Neal also argues that the Lycoming County Court of Common Pleas's March 24, 2016 Order was issued pursuant to the Pennsylvania statute governing the appointment of a special detective,[36] and that Officers Hockman and Herb went beyond the authority granted by that Order.[37] The Government contests this alleged violation of either state law statutory provision, and, in the alternative, argues that any technical violation of state law is without moment for purposes of this motion.[38] I agree with the Government.

In *Virginia v. Moore,* the Supreme Court of the United States held that "[a] State is free to prefer one search-and-seizure policy among the range of constitutionally permissible options, but its choice of a more restrictive option does

---

[34] 42 Pa.C.S.A. § 8953(a)(1).

[35] ECF No. 26.

[36] 16 Pa.C.S.A. § 1441.

[37] ECF Nos. 46 & 48.

[38] ECF No. 47.

not render the less restrictive ones unreasonable, and hence unconstitutional."[39] The *Moore* Court wrote therefore, that state law restrictions do not alter the Fourth Amendment's protections."[40] Here, both the MPJA and the Pennsylvania special detective statute are state laws which affect the territorial limits of a municipal officer's primary jurisdiction. When presented with this issue, both our Court of Appeals and courts within this Circuit have found that a violation of these state laws does not constitute a Fourth Amendment violation.[41] Therefore, even if Officers Hockman and Herb acted beyond their authority granted by either the MPJA or the special detective statute, I find that such a violation would not require the suppression of the evidence seized. Mr. Neal's argument on this issue is rejected.

> **B.     Whether Officers Hockman and Herb Has Reasonable Suspicion to Conduct a Vehicle Stop**

Mr. Neal next argues that this Court should suppress the evidence seized because Officers Hockman and Herb initiated the traffic stop without reasonable

---

[39] 553 U.S. 164, 174 (2008).

[40] *Id.*

[41] *See United States v. Chambers*, 597 F.App'x. 707, 710 (3d Cir. 2015)(non-precedential)(holding that "[e]ven if Chambers's interpretation of the Municipal Police Jurisdiction Act were correct, however, he does not explain how a violation of state law would be relevant to the federal constitutional analysis required here."); *United States v. Briggs*, No. 06-CR-715, 2011 WL 2681491, at *4 (E.D.Pa. July 8, 2011); *Wood v. Southeastern Pennsylvania Transportation Authority*, No. 14-CV-4183, 2016 WL 2619411, at *5 (E.D.Pa. May 6, 2016); *Winslow v. The Borough of Malvern PA*, No. 08-CV-1890, 2009 WL 4609590, at *4 (E.D.Pa. Dec. 7, 2009).

suspicion and thus in violation of the Fourth Amendment. The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures.[42] For Fourth Amendment purposes, a traffic stop is a seizure of both the driver and any occupants of a vehicle.[43] However, when an officer has reasonable suspicion to believe that a traffic violation has occurred, the officer may stop the vehicle.[44] If reasonable suspicion for the traffic stop is found to be lacking, evidentiary fruits of the traffic stop must be suppressed.[45]

A court determines whether reasonable suspicion exists by examining the totality of the circumstances surrounding the vehicle stop.[46] Reasonable suspicion to stop a vehicle therefore exists where the officer has adduced "specific, articulable facts to justify a reasonable suspicion to believe that an individual has violated the traffic laws."[47] Provided that such a "particularized and objective" basis for the stop exists, the purported subjective intent of an officer is irrelevant to

---

[42] U.S. Const. amend. IV.

[43] *Brendlin v. California,* 551 U.S. 249, 257 (2007); *Delaware v. Prouse,* 440 U.S. 648, 653 (1979).

[44] *United States v. Lewis*, 672 F.3d 232, 237 (3d Cir. 2012) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)).

[45] *Wong Sun v. United States,* 371 U.S. 471, 484–85 (1963); *see also Brown v. Illinois,* 422 U.S. 590 (1975).

[46] *United States v. Lewis*, 672 F.3d 232, 237 (3d Cir. 2012).

[47] *United States v. Delfin-Colina*, 464 F.3d 392, 397 (3d Cir. 2006) (citing *United States v. Cortez*, 449 U.S. 411, 416 (1981)).

the reasonable suspicion analysis.[48] Furthermore, "an officer need not be factually accurate in her belief that a traffic law had been violated but, instead, need only produce facts establishing that she reasonably believed that a violation had taken place. Consequently, a reasonable mistake of fact 'does not violate the Fourth Amendment.' "[49] This standard is "'less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.' "[50] Finally, when determining whether reasonable suspicion exists, officers may rely on their experience and knowledge.[51]

Here, the Government argues that, prior to the traffic stop of July 23, 2017, Officers Hockman and Herb had reasonable suspicion to believe Mr. Neal violated 75 Pa.C.S.A. § 3323(b), or the duties of motorists at stop signs and yield signs.[52] That section of the Pennsylvania Motor Vehicle Code ("Vehicle Code") states that:

> (b) Duties at stop signs.--Except when directed to proceed by a police officer or appropriately attired persons authorized to direct, control or regulate traffic, every driver of a vehicle approaching a stop sign shall stop at a clearly marked stop line or, if no stop line is present, before entering a crosswalk on the near side of the intersection or, if no crosswalk is present, then at the point nearest the intersecting roadway

---

[48] *United States v. Booker*, 237 F. App'x. 782, 784 (3d Cir. 2007) (non-precedential) (citations omitted).

[49] *Delfin-Colina*, 464 F.3d at 398 (quoting *United States v. Chanthasouxat,* 342 F.3d 1271, 1276 (11th Cir. 2003)).

[50] *Delfin-Colina*, 464 F.3d at 396 (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)).

[51] *United States v. Jones*, 506 F.App'x. 128, 131 (3d Cir. 2012).

[52] *United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006) (quoting *Whren v. United States*, 517 U.S. 806 (1996)("[a]ny technical violation of a traffic code legitimizes a stop")).

where the driver has a clear view of approaching traffic on the
intersecting roadway before entering. If, after stopping at a crosswalk or
clearly marked stop line, a driver does not have a clear view of
approaching traffic, the driver shall after yielding the right-of-way to any
pedestrian in the crosswalk slowly pull forward from the stopped position
to a point where the driver has a clear view of approaching traffic. The
driver shall yield the right-of-way to any vehicle in the intersection or
approaching on another roadway so closely as to constitute a hazard
during the time when the driver is moving across or within the
intersection or junction of roadways and enter the intersection when it is
safe to do so.[53]

Mr. Neal argues that because a vehicle was parked at the intersection of Market Street and West 7th Street, Officer Hockman would have been unable to observe his car at the stop sign, and was thus incapable of forming an opinion as to his noncompliance with this section of the Motor Vehicle Code.[54] He further avers that Officer Herb's report from that day indicates that Mr. Neal failed to stop at a stop sign, and Officer Hockman testified at the preliminary hearing that he could not see whether Mr. Neal stopped.[55] I find, however, that Mr. Neal's argument relies on an incomplete reading of both the factual record and the applicable section of Vehicle Code. Here's why.

First, I note that the duties of a driver at the stop sign, as defined by Section 3323(b) of the Vehicle Code, are not limited to merely stopping. Rather, as noted by the Government, the driver must also yield to oncoming vehicles "in the

---

[53] 75 Pa.C.S.A. § 3323(b).

[54] ECF No. 23, at 4–5.

[55] *Id.*

intersection or approaching on another roadway so closely as to constitute a hazard during the time when the driver is moving across or within the intersection."[56] Here, the testimony of Officer Hockman, at both the August 17, 2017 preliminary hearing[57] and the subsequent suppression hearing,[58] indicates that he believed that Section 3323(b) of the Code had been violated by Mr. Neal's failure to yield to the Honda Odyssey van. Based on this consistent and credible testimony of Officer Hockman, I find that the Government has adduced "specific, articulable facts to justify a reasonable suspicion" that Mr. Neal had violated the Vehicle Code and that the initial traffic stop was not constitutionally violative at the outset.

      **C.**      **Whether Officers Hockman and Herb Had Probable Cause to Search the Defendant's Vehicle**

Finally, Mr. Neal argues that evidence seized as a result of the warrantless search incident to his arrest should be suppressed. At the outset, I note that a warrantless search is presumptively unreasonable, and the burden is on the Government to establish by a preponderance of the evidence that the circumstances justified acting without a warrant.[59] Here, the Government advances that, while conducted without a warrant, the search of Mr. Neal's vehicle was nevertheless

---

[56] ECF No. 26, at 7 (quoting 75 Pa.C.S.A. § 3323(b)).

[57] 4/3/18 Hr'g Ex. D-1 at 2.

[58] 4/3/18 Hr'g Tr. at 9: 10–14.

[59] *Vale v. Louisiana,* 399 U.S. 30, 34 (1970); *United States v. Herrold,* 962 F.2d 1131, 1137 (3d Cir. 1992).

proper pursuant to the automobile exception. Under this exception to the warrant requirement, law enforcement officers may seize and search a vehicle without a warrant if probable cause exists to believe that the vehicle contains contraband or evidence of a crime.[60] Probable cause to search a vehicle exists when the totality of the circumstances reasonably indicate that evidence of criminality is contained therein.[61] Furthermore, "[i]f probable cause justifies the search . . . , it justifies the search of every part of the vehicle and its contents that may conceal the object of the search."[62] The Government bears the burden of establishing the applicability of this exception by a preponderance of the evidence.[63]

Mr. Neal argues that the warrantless search was improper incident to his arrest for possession of marijuana, driving under the influence, and driving with a suspended license.[64] However, as properly noted by the Government, analysis of whether the evidence seized from that vehicle should be suppressed is more properly made pursuant to the above outlined automobile exception to the warrant requirement. Here, Officer Hockman testified at both the August 17, 2017

---

[60] *United States v. Burton,* 288 F.3d 91, 100 (3d Cir. 2002)

[61] *See Maryland v. Dyson,* 527 U.S. 465, 467 (1999); *Karnes v. Skrutski,* 62 F.3d 485, 498 (3d Cir. 1995); *United States v. McGlory,* 968 F.2d 309, 343 (3d Cir. 1992).

[62] *United States v. Donahue*, 764 F.3d 293, 300 (3d Cir. 2014)(quoting *United States v. Ross*, 456 U.S. 798, 825 (1982)).

[63] *United States v. Herrold*, 962 F.2d 1131, 1143 (3d Cir. 1992); *United States v. Vasey*, 834 F.2d 782, 785 (9th Cir. 1987).

[64] ECF No. 46, at 9–12.

preliminary hearing, and this Court's suppression hearing that he smelled the odor of marijuana emanating from the vehicle.[65] Based on this evidence alone, the Government argues that probable cause existed to search Mr. Neal's vehicle for evidence of contraband. In addition however, the Government also advances as evidence of probable cause that (1) Mr. Neal dropped marijuana to the ground while undergoing a field sobriety test, and (2) Officer Hockman smelled marijuana upon returning to the car following Mr. Neal's arrest.[66]

I find that probable cause existED to search Mr. Neal's automobile because the totality of circumstances reasonably indicated that evidence of criminality was contained therein. In *United States v. Ushery*, the Third Circuit affirmed a finding of probable cause for purposes of the automobile exception where officers, who "had encountered marijuana on the job on numerous occasions, smelled burnt marijuana coming from [the defedant's] car."[67] This holding is consistent with both the decisions of other courts of appeals and district courts within this Circuit who have found that probable cause exists to search a vehicle where an experienced officer smells marijuana emanating from that vehicle.[68] Here, Officer

---

[65] 4/3/18 Hr'g Ex. D-1 at 3; 4/3/18 Hr'g Tr. at 11: 14–18.

[66] 4/3/18 Hr'g Tr. at 13: 1–8; 14:25–15:3.

[67] 400 F.App'x. 674, 676 (3d Cir. 2010).

[68] *See United States v. Humphries*, 372 F.3d 653, 658 (4th Cir. 2004); *United States v. Winters*, 221 F.3d 1039, 1042 (8th Cir. 2000); *United States v. Parker*, 72 F.3d 1444, 1450 (10th Cir. 1995); *United States v. Harrison*, No. 17-CR-59, 2018 WL 1325777, at *2 (D.Del. Mar. 15, 2018); *United States v. Everett*, No. 16-CR-195, 2017 WL 4269516, at *5-6 (W.D.Pa. Sept.

Hockman, an experienced police officer with over sixteen years of service who had been involved in over a hundred drug arrests, testified that he smelled marijuana in the vehicle both before after Mr. Neal's arrest.[69] This testimony is consistent with his prior testimony at the August 17, 2017 preliminary hearing, and the main narrative of his report of the incident.[70] Officer Hockman's consistent—and credible—testimony concerning this smell is, pursuant to the chorus of case law cited above, alone sufficient to establish probable cause to under the automobile exception. That finding however is further bolstered by the actual discovery of marijuana and an additional glassine bag with two small vials of crack cocaine on Mr. Neal's person. Therefore, finding probable cause to search the automobile and its contents based on the totality of the circumstances, I conclude that the evidence seized as result of that search should not be suppressed.

---

26, 2017); *United States v. Kennedy*, No. 13-CR-240, 2014 WL 6090409, at *13-14 (W.D. Pa. Nov. 13, 2014).

[69] 4/3/18 Hr'g Tr. at 5: 15–16; 18:16–21.

[70] 4/3/18 Hr'g Ex. D-1 at 3; Ex. G-2.

## III. CONCLUSION

Based on the above reasoning, Defendant Grady Neal's Motion to Suppress will be denied.

An appropriate Order will issue.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge